TOWN OF EAST TROY, Plaintiff-Respondent-Cross Appellant,

v.

A-1 SERVICE COMPANY, INC., and Town and Country Waste Service, Inc., Defendants-Appellants-Cross Respondents. [Case No. 94-0610.]

TOWN OF EAST TROY, Plaintiff-Appellant,

v.

A-1 SERVICE COMPANY, INC., and Town & Country Waste Service, Inc., Defendants-Respondents. [Case Nos. 94-2194 to 94-2213.]

Court of Appeals

*Nos. 94–0610, 94–2194 to 94–2213. Submitted on briefs June 1, 1995.—Decided July 26, 1995.*

(Also reported in 537 N.W.2d 126.)

120

122

On behalf of the defendants-appellants-cross respondents, the cause was submitted on the briefs of *Anthony R. Varda* of *DeWitt Ross & Stevens, S.C.* of Madison.

On behalf of the plaintiff-respondent-cross appellant, the cause was submitted on the brief of *David A. Hudec* of *Hudec Law Offices, S.C.* of East Troy.

On behalf of the Wisconsin Department of Transportation, there was an amicus curiae brief filed by *James E. Doyle*, attorney general, and *Susan K. Ullman*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.   A-1 Service Company, Inc. and Town & Country Waste Service, Inc. (A-1) are waste disposal hauling businesses registered with the Department of Transportation (DOT) to operate their trucks at the maximum registration weight allowable under the statutes, 80,000 pounds.[1] Additionally, A-1 obtained overweight permits allowing it to haul up to 117,000 pounds.

---

[1] Section 341.25(2), STATS., provides for annual registration fees for truck tractors based on gross weight.

The consolidated appeals and the cross-appeal arise out of traffic citations issued to A-1 under Town of East Troy ordinances creating a three-tiered penalty scheme. Under the first tier, the Town prosecuted A-1 for violations of DOT rules incorporating federal regulations. Under the second tier, the Town, based on the violations of the DOT rules, invalidated A-1's overweight permits, subjecting A-1 to overweight penalties. Then, under the third tier of the scheme, the Town prosecuted A-1 for improper registration because, under the Town's theory, without an overweight permit, A-1 was carrying a greater load than that permitted under its registration.

The first issue is whether a town can incorporate the DOT administrative rules into its municipal ordinances. We hold that a town has no authority to incorporate DOT rules into its ordinance and affirm the trial court on this issue.

The second issue is whether the Town can, under its own ordinance, invalidate overweight permits based on violations of DOT rules incorporating the federal motor carrier safety regulations. We hold that because DOT rules constitute conditions of overweight permits, violations of those rules can therefore form the basis for the Town's invalidation of overweight permits. Therefore, we affirm the trial court's guilty findings on some overweight citations and reverse the trial court's dismissal of others.

The third issue is whether the spilling of a vehicle's load is properly attributed to A-1, the corporate owner of the vehicle, rather than to the driver personally, for the purpose of invalidating the corporate entity's overweight permit. We hold that such a violation is properly attributed to the corporation and affirm on this basis as well.

The fourth issue is whether an overweight violation under ch. 348, STATS., also constitutes a violation of the registration statute, § 341.04(2), STATS., providing that no registered vehicle may carry "a greater load than that permitted under the current registration." We hold that overweight violations do not subject A-1 to registration violations and reverse the trial court's guilty findings on those citations.

Between May and August 1992, Town of East Troy police officers stopped A-1 a total of nine times, issuing thirty-five traffic citations. We group the citations into three classes as they relate to the town ordinance's penalty scheme.

In the first class, the Town cited A-1 for spilling waste on the highway, excessive steering play and various other equipment and safety violations of the federal motor carrier safety regulations. See 49 C.F.R. § 393 (1994). The Town wrote the citations under a town ordinance which, on its face, states that it incorporates the state traffic code found in chs. 340 to 348, STATS.[2] However, on the specific citations, the Town purports to enforce and implicitly incorporate into its

---

[2] Our search of the appellate record did not reveal a complete copy of the applicable ordinance; therefore, we quote the following excerpted version taken from the trial court judgment:

SECTION 6.01—PROVISIONS OF STATE LAW ADOPTED BY REFERENCE.

(1) State Traffic Forfeiture Laws Adopted.

(a) Except as otherwise specifically provided in this ordinance, all provisions of chapters 340 to 348 of the Wisconsin Statutes describing and defining regulations with respect to vehicles and traffic for which the penalty is a forfeiture only, ... are hereby adopted and by reference made a part of this ordinance as if fully set forth herein. Any act required to be performed or prohibited by any statute incorporated herein by reference is required or prohibited by this ordinance.

ordinance WIS. ADM. CODE § TRANS 325.01(4), the "Motor Carrier Safety Regulations," which in turn incorporates "Title 49, Code of Federal Regulations, part 393, parts and accessories necessary for safe operation."

In the second class, the Town cited A-1 for overweight violations even though none of the vehicles were operating at a gross weight greater than that allowed by their overweight permits. This was because the Town construed the foregoing equipment and safety violations as violations of conditions of the overweight permits and consequently invalidated the permits under § 348.25(2)(a), STATS.[3] Thus, the Town calculated the overweight penalties as if A-1 did not have an overweight permit.

In the third class of citations, the negation of the overweight permits subjected A-1 to an improper registration violation. The Town's theory was that the naked unpermitted vehicles were then in violation of the town ordinance incorporating § 341.04(2), STATS., which prohibits vehicles from operating in excess of the weights authorized by their registrations. Thus, any weight over A-1's registered weight, 80,000 pounds, was a registration violation.

After two separate bench trials, the court dismissed twenty-eight citations. The trial court then found A-1 guilty of seven of the ordinance violations—four overweight and three improper registration violations—all apparently either based on

(b) Sections of chapters 340 to 348 adopted by reference shall include but not be limited to the following . . ..

[3] Section 348.25(2)(a), STATS., provides that "any person who violates a condition of a permit under which that person is operating is subject to the same penalties as would be applicable if that person were operating without a permit."

127

violations of conditions of the overweight permits or suspensions of the permits.[4]

A-1 appeals six of the convictions (No. 94-0610).[5] The Town cross-appeals the dismissals of eight citations[6] in the first bench trial (No. 94-0610) and appeals

[4] In the first bench trial, the trial court, the Honorable John R. Race presiding, dismissed two citations for the Town's failure to employ proper weighing techniques and six citations on the basis that the Town cannot adopt DOT rules. All of the seven guilty findings are from the first bench trial. Three guilty findings (citations R699446-6, R699445-5 and SO33456-3 issued on May 6, 1992) are conceivably related to DOT "spring thaw restrictions." When spring thaw restrictions are in effect, overweight permits are suspended and permittees must operate at weight limits set forth in ch. 348, STATS. *Compare* WIS. ADM. CODE § TRANS 255.06(2) *with* § 348.15(3)(c), STATS. However, at least four violations (two overweight violations under § 348.15 (3)(c) and two companion improper registration violations: SO 33451-5, S033454-1, SO33357-2 and SO33368-6) can be attributed to an invalidation of an overweight permit based on companion violations of DOT rules.

Even so, in the second bench trial, Judge Race dismissed all twenty of the citations on the basis that the Town could not adopt the administrative code and, therefore, any violation of the code could not invalidate an overweight permit or, correlatively, subject A-1 to improper registration violations.

[5] A-1 in its brief-in-chief indicates that it does not appeal the guilty finding on one of the overweight violations (R699446-6). The undisputed testimony at trial was that spring thaw restrictions were in effect on the date of this citation and that, therefore, A-1 was restricted to operating at up to 80,000 pounds. A-1, however, does appeal two improper registration violations issued on the same date (R699445-5 and SO33456-3).

[6] The trial court dismissed two of these citations (SO33384-1 and S033386-3) for improper weighing procedure. The Town presents no argument regarding these citations. Therefore, we deem any appeal of these citations abandoned.

the dismissals of twenty citations in the second bench trial (Nos. 94-2194 to 94-2213).[7] This case began as an appeal to be decided by one judge under § 752.31(2),(3), STATS. Upon review of the briefs, we ordered that the appeal be decided by a three-judge panel. The DOT filed an amicus curiae brief at our request.

Now we turn to the first issue—whether the Town can incorporate DOT regulations into town ordinances. Although the State of Wisconsin has preempted the field of traffic regulations, it nonetheless has chosen to share the field with local authorities. *County of Walworth v. Rohner*, 108 Wis. 2d 713, 718, 324 N.W.2d 682, 684 (1982); *see City of Janesville v. Walker*, 50 Wis. 2d 35, 36-37, 183 N.W.2d 158, 159 (1971). Local municipalities derive their authority to enact traffic ordinances from §§ 349.03 and 349.06, STATS. *See Walker*, 50 Wis. 2d at 36-37, 183 N.W.2d at 159. Thus, our review of this issue requires interpretation of these enabling sections, presenting a question of law which we review de novo. *See Town of East Troy v. Town & Country Waste Serv., Inc.*, 159 Wis. 2d 694, 701, 465 N.W.2d 510, 514 (Ct. App. 1990).

In § 349.06(1)(a), STATS., under a heading entitled "Express Regulatory Powers," the legislature affirmatively delegated to municipalities the power to enact and enforce traffic regulations which are "in strict conformity with one or more provisions of chs. 341 to 348

---

[7] Although the judgment states that the trial court dismissed twenty-one citations and, in the notice of appeal, the Town appeals twenty-one citations, the appellate record reveals twenty citations. And we presume that the reference in the judgment and the notice of appeal to citations M33320 and S464230-1 are actually meant as citations in the appellate record—M39320 and S464230-4.

and 350 for which the penalty for violation thereof is a forfeiture." *See also Walker,* 50 Wis. 2d at 37, 183 N.W.2d at 159-60. Additionally, under § 349.03(1), STATS., a local authority may "enact or enforce any traffic regulation" that either under subsec. (a) "[i]s not contrary to or inconsistent with chs. 341 to 348 and 350" or under subsec. (b) "[i]s expressly authorized by ss. 349.06 to 349.25 or some other provision of the statutes."

The Town argues that under subsec. (1)(a) of § 349.03, STATS., it may adopt administrative rules not expressly authorized by statute so long as the rules are not inconsistent with chs. 341 to 348 and 350, STATS. We disagree with the Town's construction and application of this subsection to the circumstances of this case.

In *City of Janesville v. Garthwaite,* 83 Wis. 2d 866, 874-75, 266 N.W.2d 418, 423 (1978), our supreme court construed language in § 349.03(1)(a), STATS., and held that where the local ordinance involves a matter which the legislature has not chosen to regulate, local authorities may enact ordinances that are not inconsistent with the traffic code. *See also Steel v. Bach,* 124 Wis. 2d 250, 253, 369 N.W.2d 174, 175 (Ct. App. 1985). However, as we read the development of the case law in this area, in matters the legislature has chosen to regulate, the local ordinance must strictly comply with chs. 341 to 348 and 350, STATS., *and* be expressly authorized by a statutory provision. *See Garthwaite,* 83 Wis. 2d at 873-74, 266 N.W.2d at 422-23 (distinguishing *Walker,* 50 Wis. 2d at 39-40, 183 N.W.2d at 160-61); *City of Madison v. McManus,* 44 Wis. 2d 396, 401, 171 N.W.2d 426, 429 (1969); *compare Walker,*[8] 50 Wis. 2d at 37, 183

---

[8] In *City of Janesville v. Walker,* 50 Wis. 2d 35, 36-37, 183 N.W.2d 158, 159-60 (1971), our supreme court addressed an

N.W.2d at 159-60, *with* § 349.03(1)(b) *and* § 349.06(1), STATS.

At the outset, we conclude that this case does not fall under subsec. (1)(a) of § 349.03, STATS. The Town seeks to adopt WIS. ADM. CODE § TRANS 325.01(4), which is enforced under § 110.075, STATS. *See* WIS. ADM. CODE § TRANS 325.05(1). Section 110.075 establishes the motor vehicle inspection program, which is an area the legislature has *chosen to regulate* through statutory enactments and delegation of regulatory authority to the DOT. Therefore, we conclude under *Garthwaite* that the Town's authority to enact the ordinance in the present case must be expressly authorized by statute, as required under subsec. (1)(b) of § 349.03. *See Garthwaite*, 83 Wis. 2d at 873-74, 266 N.W.2d at 422-23.

We find no such statutory authorization. The enabling sections do not mention the administrative code. Nor does the Town point to any provision in chs. 341 to 348 and 350, STATS., and we know of none, which grants local authorities the power to enact DOT rules.

---

argument similar to that set forth by the Town here. The City of Janesville contended that subsecs. (a) and (b) of § 349.03(1), STATS., presented two separate powers to enact traffic ordinances, with subsec. (a) permitting the enactment of rules which, while not in strict conformity with the traffic statutes, are not inconsistent with the traffic statutes. Our supreme court rejected that argument, holding that §§ 349.03 and 349.06, STATS., must be read together to establish one test—that municipal traffic ordinances must be in strict conformity with chs. 341 to 348 and 350, STATS. *See Walker*, 50 Wis. 2d at 36-37, 183 N.W.2d at 159-60 (construing § 349.03, STATS., 1969, which provides that local traffic regulation may not be inconsistent with chs. 341 to 348, STATS.).

Further, § 110.075, STATS., does not address enactment powers of local authorities. Although § 110.07(1)(b), STATS., states that all law enforcement officers may enforce the administrative rules, nowhere in § 110.07 does it state that local authorities may set up their own vehicle inspection program or *adopt* § TRANS 325.01(4) or any DOT rules. We discovered no statutory language indicating that the state intends to share its regulatory powers under § 110.075 with local authorities. Therefore, we hold that neither the enabling statutes nor any other statute gives the Town authority to adopt § TRANS 325.01(4).

We also conclude that the Town's adoption of the DOT rule was improper on an additional ground.[9] The Town contends that its power to adopt DOT rules naturally flows, as part of the overall regulatory scheme, from its power to adopt statutory traffic laws and, therefore, express authorization is unnecessary. However, we agree with A-1 that the Town's position raises a fundamental due process issue. Due process requires that parties have reasonable notice of an offense. *Town of East Troy*, 159 at 704, 465 N.W.2d at 515. Here, without express authorization in the sections giving municipalities their enactment powers, the parties are not put on reasonable notice that their potential liability under town ordinances includes liability under the administrative code. We note that local authorities

[9] We acknowledge, as the DOT states in its amicus brief, that cases should be decided on the narrowest possible ground. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989). However, here, we decide on two independent and equal bases and conclude that each basis would be sufficient grounds to affirm the trial court.

132

adopting state traffic laws are not required to incorporate them by reference in their ordinances. *See* § 349.06(2), STATS. However, § 349.03, STATS., and § 349.06 limit the enactment power of local authorities to that expressly authorized by statute, thereby putting parties on notice that their liability under municipal ordinances could include that under state statutory law—but not the state administrative code. We affirm the trial court's dismissal of citations relating to the town ordinance adopting the DOT rule.[10]

We move on to the next issue, which is whether compliance with the DOT rules is a condition of an overweight permit. This issue involves the construction of provisions in ch. 348, STATS., and related administrative code sections, presenting a question of law which we review de novo. *See Town of East Troy*, 159 Wis. 2d at 701, 465 N.W.2d at 514.

Section 348.25(2)(b), STATS., states that any permittee who violates the permit's weight restrictions, but complies with the permit's other conditions, is subject to forfeiture penalties computed from the weight restriction authorized in the permit.[11] *Town of East*

---

[10] S033387-4, S033390-0, R699448-1, S033383-0, S033382-6, S033399-2, S464230-4, S464251-4, S464252-5, S464210-5, S464218-6, S464238-5, S464236-3, S464237-4 and S464235-2.

[11] Section 348.25(2)(b), STATS., provides that overweight penalties are calculated under § 348.21(3), STATS.; it specifically states:

> If an overweight permit has been obtained under s. 348.26 or 348.27, and the vehicle exceeds the weight stated in the permit, any overweight violation shall be computed on the basis of the weight authorized in the permit. The amount of the forfeiture for overweight violations determined under this paragraph shall be calculated as provided in s. 348.21(3). This paragraph does not apply if any other conditions of an overweight permit are violated.

*Troy*, 159 Wis. 2d at 698, 465 N.W.2d at 513. However, that rule does not apply if the permittee violates "any other conditions of an overweight permit." *See* § 348.25(2)(b). Then the permittee "is subject to the same penalties as would be applicable if that person were operating without a permit." *See* § 348.25(2)(a). Those penalties are calculated according to § 348.15(3)(c), STATS., requirements.

The DOT may impose reasonable conditions for the issuance of an overweight permit. Section § 348.25(3), STATS. Under WIS. ADM. CODE § TRANS 269.14, the DOT has established the "[g]eneral conditions and requirements" for garbage or refuse permits. Section TRANS 269.14 provides: "A permittee shall comply with all applicable statutes, ordinances, *rules and policies of any state agency* or subdivision of the state, unless they are modified by the conditions of the permit." (Emphasis added.)

The Town and the DOT in its amicus brief contend that 49 C.F.R. § 393, federal motor carrier safety regulations—which prohibit spilling, excessive steering play, air leak suspension, and other equipment defects—are all incorporated into the DOT rules and therefore are conditions of A-1's permits. We agree.

In WIS. ADM. CODE § TRANS 327.03(4), the DOT incorporates 49 C.F.R. § 393 (parts and accessories necessary for safe operation) into its administrative rules.[12] Thus, we conclude that § TRANS 327.03(4), and

---

[12] The DOT, in its amicus brief, points out that WIS. ADM. CODE § TRANS 325.01(4), which the Town seeks to incorporate in its ordinance, is applicable only to interstate commerce. Since the testimony at trial was that the vehicles were operating wholly within the State of Wisconsin, the DOT contends that § TRANS 325.01(4) would not apply to the circumstances of this

by incorporation, 49 C.F.R. § 393, as a rule of the DOT is a rule "of any state agency" under § Trans 269.14. Even though, under the holding of the present case, the Town may not adopt the DOT rule to enforce an independent substantive offense under a town ordinance, a violation of a permit condition need not be an independent substantive vehicle code offense for which a conviction can be obtained. *See Town of East Troy*, 159 Wis. 2d at 703, 465 N.W.2d at 515. We hold that compliance with § Trans 327.03 incorporating the federal regulations is a condition of overweight permits.

The third issue is whether the spilling violations were properly attributed to A-1 for the purpose of invalidating its overweight permit. A-1 contends that the spilling violations, which are enforced under § 110.075(1),[13] Stats., should be attributed to the driver because that section contains a scienter requirement—that no person shall "*knowingly* permit to be driven . . . any vehicle . . . which is not in conformity with the requirements of this section." *See* § 110.075(1) (emphasis added). A-1 argues that without proof that it knowingly permitted the driver to violate the DOT rules, it should not suffer the overweight penalties.

We disagree with A-1 because, as the DOT points out, § 110.075(1), Stats., has other language not containing a scienter requirement. That section also provides that no person shall "*cause* . . . to be driven . . .

---

case. However, the DOT also points out that Wis. Adm. Code § Trans 327.03, applicable to intrastate commerce, incorporates those same federal regulations.

[13] Section 110.075(1), Stats., provides: "No person shall drive or move, or cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is not in conformity with the requirements of this section."

any vehicle . . . which is not in conformity." *Id.* (emphasis added). "Knowingly" does not modify "cause."

*State v. Dried Milk Prods. Coop.*, 16 Wis. 2d 357, 361, 114 N.W.2d 412, 414-15 (1962), provides further guidance on the construction of "cause." In that case, our supreme court construed "cause" in § 348.02, STATS., 1959,[14] and held that while the term carried a requirement of some awareness, it was no more than "an awareness of the vehicle operating on the highways pursuant to the licenses and within the scope of the owner's or employer's business." *Dried Milk Prods.*, 16 Wis. 2d at 361, 114 N.W.2d at 414-15. The court also noted that "knowingly" did not modify "cause," as in previous versions of the statute. *See id.* at 359-60, 114 N.W.2d at 414.

We hold that the *Dried Milk Prods.* construction of "cause" applies here as well. It is undisputed that the A-1 vehicles were "operating on the highways pursuant to the licenses and within the scope of [its] . . . business." *See id.* at 361, 114 N.W.2d at 414-15. And A-1, as the employer of the drivers and the owner of the vehicles, does not claim that it was unaware of those operations.

Furthermore, we are convinced that ch. 348, STATS., relating to overweight prosecutions, is consistent with our interpretation. Section 348.20, STATS., states the policy for prosecuting overweight violations:

It is declared to be the public policy of the state that prosecutions for overweight violations shall in every instance where practicable be instituted

---

[14] Section 348.02(3), STATS., 1959, provided: "Any owner of a vehicle who causes or permits such vehicle to be operated on a highway in violation of this chapter is guilty of the violation the same as if he had actually operated the vehicle himself."

against the person holding the authority, certificates, licenses or permits evidencing operating privileges from the department which may be the proper object of cancellation or revocation proceedings. In instances where a combination of tractor and trailer or semitrailer is used, the person standing in the relationship of principal or employer to the driver of the tractor portion of the vehicle combination is liable for violation of ss. 348.15 to 348.17 along with the owner holding authority, certificates, licenses or permits from the state.

Therefore, our legislature has set forth the policy prescribing prosecution against employers and owners—the permit holders—rather than drivers. Here, it is undisputed that A-1, not the driver, held the permits and was, consequently, subject to any revocation of the permits. Thus, we hold that the 49 C.F.R § 393 violations were properly attributed to A-1. We reverse the trial court's dismissal of the overweight citations in the second bench trial[15] and affirm the trial court's guilty findings on the overweight citations in the first bench trial.[16]

A-1 contends that if we reverse the trial court's dismissal of any citations from the second bench trial, we must remand for a determination of the factual bases of those citations. However, according to the judgment and transcript from the second bench trial, the parties stipulated to the factual bases in the citations, including the weights of the vehicles, the spilling of waste material and excessive steering play, and then presented their cases to the trial court solely on the

[15] M39319, S464239-6, M39320, S464228-2, S464258-4 and S464243-3 (Nos. 94-2194 to 94-2213).
[16] S033386-3, S033454-1 and S033368-6 (No. 94-0601).

questions of law. There thus exists a conflict between A-1's contention and the apparent state of the record. Therefore, we remand for the trial court to resolve this conflict and rule whether the stipulated facts support the charges and, if so, to determine the appropriate penalties.

■

The fourth issue is whether overweight violations also subject A-1 to registration violations. A-1 obtained overweight permits under § 348.27(12), STATS. This permit allowed it to operate at weights in excess of maximum weight limitations, 80,000 pounds, set forth in § 348.15(3)(c), STATS., and the maximum weight a carrier is allowed to register under the registration statute, § 341.04(2), STATS. This issue requires us to construe § 341.04(2) with ch. 348, STATS., presenting a question of law which we review de novo. *See Town of East Troy*, 159 Wis. 2d at 701, 465 N.W.2d at 514.

Section 341.04(2), STATS., provides in relevant part:

> [I]t is unlawful for any person to operate or for the owner to consent to being operated on any highway of this state any registered vehicle the construction or use of which has been changed so as to make the vehicle subject to a higher fee than the fee at which it currently is registered or which is carrying a greater load than that permitted under the current registration.

The Town contends that, under this section, when a carrier violates an overweight permit by carrying a load in excess of its permit, at the same time the carrier also violates the registration statute by carrying a greater load than that permitted under the current registration. Thus, under the Town's argument, the

overweight permit is a temporary shield against a registration violation. We disagree with the Town.

Section 341.04(2), STATS., proscribes operating at a weight which would "make the vehicle subject to a higher fee than the fee at which it currently is registered." Under the statute's penalty provision, § 341.04(3)(a) and (b), a person who operates an improperly registered vehicle "may be required to forfeit not more than $500" and "the court shall order the offender to make application for registration or reregistration and to pay the required fee." *See* § 341.04(3)(c). Thus, what is prohibited is operating at a weight which commands a higher registration fee. And the penalties for a registration violation are forfeiture *and* reregistering at the proper weight and paying the proper fee. Here, as A-1 argues, it was registered at the maximum registration weight allowable under Wisconsin statutes and it paid the proper registration fee.

Moreover, nothing in ch. 348, STATS., persuades us to graft registration penalties onto the sections providing for overweight violations. Under § 348.27(12), STATS., the DOT issues overweight permits for the transportation of garbage in a vehicle "which exceeds statutory weight and length limitations." Sections 348.15 and 348.16, STATS., establish the statutory weight limits for operating on the state Class A and B highways. Further, § 348.25(1), STATS., provides that "[n]o person shall operate a vehicle or transport an article . . . without first obtaining a permit therefor as provided in . . . [§ ] 348.27 if such vehicle . . . exceeds the maximum limitations on . . . weight . . . of load imposed by this chapter." These ch. 348 sections do not mention the registration statute or its requirements. We agree with the DOT that under ch. 348, overweight permits create exceptions to the weight limits set forth in ch.

348, not to the registration requirements of § 341.04, STATS. Thus, we conclude that the legislature intended the registration penalty and overweight penalty provisions to be independent of each other.

Therefore, there being no higher registration status A-1 could achieve and no higher registration fee it could pay, we hold that A-1 did not violate the registration statute. We reverse the trial court's guilty findings on the improper registration citations from the first trial[17] and affirm[18] its dismissal of such citations from the second trial.[19]

*By the Court.*—Judgment affirmed in part and reversed in part.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[17] S033451-5, R699445-5, S033357-2 and S033456-3.

[18] We affirm on other grounds than those given by the trial court. The trial court dismissed these citations on the ground that, without authority to adopt DOT rules, the Town had no basis to invalidate the overweight permits and consequently to prosecute for improper registration.

[19] S464202-4, S464250-3, S464259-5 and S464254-0.