**Rosemary DEIDA, Plaintiff,**

v.

**CITY OF MILWAUKEE and Scott Mc Callum, Defendants.**

**No. 01–C–0324.**

United States District Court,
E.D. Wisconsin.

Dec. 10, 2001.

Mathew D. Staver, Erik W. Stanley, Joel L. Oster, Liberty Counsel, Longwood, FL, for Rosemary Deida.

Rudolph M. Konrad, Stuart Mukamal, Milwaukee City Attorney's Office, Milwaukee, WI, Thomas J. Balistreri, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for Milwaukee, City of, Governor, State of Wisconsin, Scott McCallum, in his official capacity as Governor of the State of WI, James E. Doyle, Milwaukee County, E. Michael McCann, Douglas L. Van Buren.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff, Rosemary Deida, brings this action against the Governor of Wisconsin and the City of Milwaukee ("City") under 42 U.S.C. § 1983 challenging under the First and Fourteenth Amendments to the United States Constitution a state statute and an identically worded city ordinance which prohibit placing pamphlets on vehicles and seeking declaratory and injunctive relief. Before me now are plaintiff's motion for a preliminary injunction against enforcement of the city ordinance and the City's motion to dismiss plaintiff's complaint.[1]

## I. FACTS

Plaintiff Rosemary Deida is a Christian with deeply held religious beliefs. She believes that it is important to tell others about the tenets of her faith and thus from time to time distributes religious literature to the public. She hands leaflets to people she sees on the street and in public buildings, and she sometimes places leaflets under the windshield wipers of parked cars. It is this last activity that led to the dispute in this case.

On the morning of December 20, 2000, plaintiff drove from her home in Milwaukee, Wisconsin to City Hall. She parked her car on North Market Street, a public street adjacent to City Hall. As she walked toward City Hall, she passed out leaflets to passersby. She continued to distribute them inside City Hall. As she walked back to her car, she placed a leaflet under the windshield wiper of each car she passed on North Market Street. She saw Officer Walter Tyshynsky exiting City Hall and

---

1. Defendant McCallum contends that the Eleventh Amendment bars plaintiff's claims against him and, in response, plaintiff has moved to add other state officials as defendants. This decision does not address the Eleventh Amendment issue, plaintiff's motion to add other defendants or her claims against defendant McCallum.

"felt led" to give him a leaflet also. (Compl.¶ 22.) Officer Tyshynsky responded by saying that he intended to cite her for violating a city ordinance that prohibits placing pamphlets on cars. Plaintiff told him that she "felt people needed to hear the message contained in the tracts and that she was just trying to let people know about God and that this was her way of doing so." (Compl.¶ 26.) She then asked for his name and badge number so that she could pray for him.

As luck would have it, Office Tyshynsky had run out of citation forms, so he wrote plaintiff's name and identifying information from her driver's license on the leaflet she had given him. He told her to remove the leaflets from the cars on North Market Street. Plaintiff refused and continued to distribute leaflets to passersby.

The next day, Officer Tyshynsky delivered a citation to plaintiff at her house. The citation stated that she had violated Milwaukee City Ordinance 101–3 "Adopting State Statute 469.94(4)" and was subject to a forfeiture of $158.00. (Compl.Ex. A.) On January 26, 2001, plaintiff paid the forfeiture. Since then, she has on some occasions placed religious leaflets on cars but at other times has refrained from doing so for fear of receiving additional citations.

■ In Wisconsin, city traffic ordinances must be "expressly authorized by" state statute and must "strict[ly] conform[ ]" to the state statutes addressing the same matters. *Town of East Troy v. A–1 Serv. Co., Inc.,* 196 Wis.2d 120, 130, 537 N.W.2d 126 (Wis.Ct.App.1995). In order to comply with these requirements, the City has simply adopted Chapter 346 of the Wisconsin Statutes.[2] Milwaukee, Wis., Traffic Code § 101–3(1). Chapter 346 en-

titled "Rules of the Road" governs conduct on "highways," defined as "all public roads and thoroughfares." Wis. Stat. §§ 346.01, 340.01(22).

The ordinance under which plaintiff was cited derives from a provision in Chapter 346 which states,

> Missiles, circulars or pamphlets. No person shall throw any missile, circular or pamphlet at the occupants of any vehicle or throw or place any missile, circular or pamphlet in or on any vehicle, whether or not the vehicle is occupied. This subsection does not apply to any person who places on a vehicle educational material relating to the parking privileges of physically disabled persons if the person has a good faith belief that the vehicle is violating state or local law on parking for motor vehicles used by the physically disabled and the educational material has been approved by the council on physical disabilities as provided under s. 46.29(1)(em).

Id. § 346.94(4). Violators are subject to forfeiture of "not less than $20 nor more than $400." Id. § 346.95(2).

According to the City, the ordinance serves several purposes, including the protection of private property, the reduction of litter and visual clutter and driver and pedestrian safety.

## II. JUSTICIABILITY: STANDING AND RIPENESS

■ The City has not questioned whether plaintiff has raised a justiciable case or controversy. Nevertheless, "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *Tobin for Governor v. Ill.*

---

**2.** The Milwaukee ordinance states, "The city of Milwaukee adopts ch. 346, Wis. Stats., 1969, and all subsequent amendments thereto defining and describing regulations with re-

spect to vehicles and traffic for which the penalty is forfeiture only, including penalties to be imposed."

*State Bd. of Elections,* 268 F.3d 517, 527 (7th Cir.2001) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

■ Standing and ripeness are essential aspects of justiciability. To have standing to raise a claim, a plaintiff must demonstrate that she has suffered (1) an "actual or imminent . . . invasion of a legally protected interest" (2) caused by the defendant that (3) "a favorable decision is likely to redress." *Id.* (citations omitted). The related doctrine of ripeness requires the court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,* 149 F.3d 679, 687 n. 3 (7th Cir. 1998) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

■ When a plaintiff raises a First Amendment challenge to a statute imposing penalties, she can satisfy both the first prong of the standing test and the ripeness requirement by establishing the elements outlined in *Babbitt v. Farm Workers Nat'l Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). *Commodity Trend Serv.,* 149 F.3d at 687 n. 3. *Babbitt* provides a more relaxed injury and ripeness standard in the First Amendment context where a law's mere existence can chill speech even before the law is actually enforced. *Pittman v. Cole,* 267 F.3d 1269, 1283 (11th Cir.2001).[3] Under *Babbitt,* a plaintiff does not have to expose herself to actual prosecution to show injury. *Commodity Trend Serv.,* 149 F.3d at 687 (quoting *Babbitt,* 442 U.S. at 298, 99 S.Ct. 2301)

(internal quotation marks omitted). She need only allege that she intends to engage in arguably constitutionally protected conduct proscribed by the statute and demonstrate that by engaging in such conduct, she would face "a credible threat of prosecution." *Id.* "[A] threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the government fails to indicate affirmatively that it will *not* enforce the statute." *Id.* (emphasis in original) (citing *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)).

■ Plaintiff handily meets the standing and ripeness requirements. She alleges that she wishes to leaflet cars, but at times has refrained from doing so for fear of being cited. At other times she has engaged in leafleting despite her fear. Leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment. *Martin v. City of Struthers,* 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). Finally, she faces a credible threat of prosecution because the City has not disavowed the ordinance; indeed the City has already cited her once for violating it. Therefore, plaintiff meets the injury requirement necessary to demonstrate standing and ripeness. Plaintiff satisfies the second prong of the standing test because the City's enactment and enforcement of the ordinance has caused her to refrain from speaking and to speak only at the risk of prosecution. Finally, she establishes the third prong because an injunction preventing the City from enforcing the ordinance would enable her to leaflet without fear, eliminating any un-

---

3. *Babbitt* involved a First Amendment challenge to a criminal statute. *Babbitt,* 442 U.S. at 298, 99 S.Ct. 2301. Although the ordinance challenged here is civil in nature it authorizes significant penalties including a forfeiture of up to $400.00 and jail time if the violator fails to pay. Thus, the ordinance can chill speech in the same way as a criminal statute. Therefore, *Babbitt* supplies the most appropriate standard for determining justiciability.

justified chill. Plaintiff, therefore, has standing to challenge the city ordinance, and her claim is ripe for judicial review.

## III. REQUIREMENTS FOR A PRELIMINARY INJUNCTION

■ To obtain a preliminary injunction, plaintiff must show: (1) a reasonable likelihood of success on the merits; (2) that she has no adequate remedy at law; (3) that she will suffer irreparable harm if an injunction does not issue; (4) that the threatened injury she faces outweighs the injury defendant will suffer if the injunction is granted; and (5) that an injunction is in the public interest. *JAK Prods., Inc. v. Wiza,* 986 F.2d 1080, 1084 (7th Cir.1993). "Although in theory these elements are distinct, in the First Amendment context they essentially reduce to the question of whether plaintiff is likely to succeed on the merits." *Wil–Kar, Inc. v. Vill. of Germantown,* 153 F.Supp.2d 982, 987 (E.D.Wis. 2001). As stated in *Wil–Kar,* "[t]his is because the loss of First Amendment freedoms is presumed to constitute irreparable harm, and irreparable injury establishes that there is no adequate remedy at law. Further, because governmental compliance with the First Amendment always serves the common good, the public interest also turns on the merits." *Id.* (citation omitted).

## IV. DISCUSSION

The Free Speech Clause of the First Amendment, made applicable to states and municipalities through the Fourteenth Amendment, *Fiske v. Kansas,* 274 U.S. 380, 47 S.Ct. 655, 71 L.Ed. 1108 (1927), provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The clause applies to the ordinance at issue because leafleting is a form of speech combined with conduct, *Martin,* 319 U.S. at 143, 63 S.Ct. 862. Further, the particular kind of speech in-

volved in the present case, religious expression, "holds a place at the core of the type of speech that the First Amendment was designed to protect." *DeBoer v. Vill. of Oak Park,* 267 F.3d 558, 570 (7th Cir. 2001) (citing *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 760, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995)). In its brief, the City sometimes seems to suggest that the ordinance merely bars access to private vehicles, implying that it is no different from an anti-trespassing regulation and has no First Amendment implications. The ordinance, however, regulates the dissemination of "missile[s], circular[s] or pamphlet[s]," all of which people use to communicate ideas. Thus, it clearly impacts on speech and, therefore, implicates the First Amendment.

### A. Standard of Review

In analyzing a statute or regulation under the First Amendment, it is critical to determine the appropriate level of scrutiny. If an ordinance is subject to strict scrutiny, the most exacting standard of review, it is much less likely to survive a First Amendment challenge than if subjected to a more forgiving standard. To survive strict scrutiny, an ordinance must be justified by compelling governmental interests and employ the least restrictive means to effectuate those interests. *Sable Communications of Cal., Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). Thus, the first inquiry in analyzing the ordinance under the First Amendment is whether strict scrutiny or a more relaxed standard of review is appropriate.

### 1. Relevant Factors in Determining Level of Scrutiny

#### a. Whether Regulation is Content–Based or Content–Neutral

■ When a governmental regulation is challenged under the First Amendment,

the applicable standard of review depends on a number of factors. Probably the most important factor is whether the regulation is content-based or content-neutral. *See Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 228–30, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). Content-based regulations are presumptively invalid under the First Amendment and subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny. *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir.2000) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)). This rule holds true whether the regulation restricts pure speech or restricts speech mixed with conduct. *Texas v. Johnson*, 491 U.S. 397, 407, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Strict scrutiny applies to content-based regulations because their purpose is typically to suppress free expression, contrary to the First Amendment imperative that the government not discriminate against speech based upon its content or viewpoint. *Wil–Kar*, 153 F.Supp.2d at 982.

■ Content-based regulations are defined as those that distinguish favored from disfavored speech based on the ideas expressed. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000). For example, "a general ban on speech in the vicinity of a school is content-neutral ... whereas an analogous ban on speech containing an exemption for speech relating to labor disputes is content-based. The former regulation requires no consideration of content before applying the ban, while the latter regulation requires consideration of whether the speech in question refers to a labor dispute before it is possible to determine if the

regulation applies." *Schultz*, 228 F.3d at 840–41 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 119–20, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). In striking down an ordinance that prohibited picketing within 150 feet of a school unless the picketing addressed a labor dispute, the *Mosley* court explained that the "operative distinction [between a lawful picket and an unlawful one was] the message on a picket sign." *Mosley*, 408 U.S. at 95, 92 S.Ct. 2286. *See also Carey v. Brown*, 447 U.S. 455, 460–61, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (law that prohibited picketing in a residential area unless the picketing targeted a business involved in a labor dispute "accord[ed] preferential treatment to the expression of views on one particular subject" and was, therefore, content-based).

### b. Whether Regulation Restricts Expression on Public Property

■ A second factor in determining whether strict scrutiny applies is whether the regulation restricts expression on public property. Enactments restricting speech on public property are typically analyzed in a different manner than other restrictions on speech. In order to determine the extent to which a person may engage in expressive activity on government property the Supreme Court generally applies what is known as forum analysis. Forum analysis balances the "Government's interest in limiting the use of its property to its intended purpose ... [against] the interest of those wishing to use the property for other purposes." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Under forum analysis, limitations that the government may lawfully place on classes of speech vary depending upon

whether the relevant forum is determined to be a traditional · open forum, a public forum created by government designation or a nonpublic forum. *Pfeifer v. City of West Allis,* 91 F.Supp.2d 1253, 1258 (E.D.Wis.2000).

■ Traditional public fora are those open for speech since time immemorial streets, sidewalks and parks. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). There, content-based restrictions on speech must satisfy strict scrutiny. *Id.* With exceptions not relevant here, strict scrutiny also applies to content-based restrictions in designated public fora, created when the government opens property for expressive activity. *Id.* All other fora fall into the residual category of non-public fora where strict scrutiny is not the appropriate standard. *Id.* at 46, 103 S.Ct. 948. There, restrictions need only be reasonable and viewpoint neutral. *Id.*

### c. Whether Regulation Targets Secondary Effects of Speech

■ A third factor relevant to whether an enactment is subject to strict scrutiny is whether it is *"justified* without reference to the content of the regulated speech." *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (emphasis in original) (internal citation and quotation marks omitted). If so, the regulation is subject to a lower level of review than strict scrutiny. Such a justification is present if the regulation's predominate concern is with the "secondary effects" of the regulated speech, rather than with its content. *Id.* at 47, 106 S.Ct. 925. This rule has enabled governmental bodies to impose restrictions on adult entertainment, the adverse secondary effects of which have sometimes been found to include increased crime, decreased property value and urban blight. *Id.* at 48, 106 S.Ct. 925.

### 2. Ordinance is Content–Based

■ The ordinance in the present case prohibits the placement of pamphlets on vehicles except for those pamphlets containing "educational material ... approved by the council on physical disabilities ... relating to the parking privileges of physically disabled persons." Wis. Stat. § 346.94(4). The · Wisconsin Council on Physical Disabilities is a state council which assists policymakers and promotes public awareness of the problems facing physically disabled people. Id. § 46.29(1). Among other things, the Council is charged with "[a]pprov[ing] educational material relating to the parking privileges of physically disabled persons for placement on vehicles." Id. § 46.29(1)(em). Thus, the ordinance prohibits placing leaflets on cars except for those leaflets concerning the parking rights of the disabled and which have been approved by the Council.

The foregoing makes clear that the ordinance is content-based. Under the ordinance, an officer who observes someone placing a leaflet on a vehicle must examine the content of the leaflet in order to determine if the leafleter violated the ordinance. If the content of the leaflet relates to parking privileges of the disabled and has been approved by the Council, then the leafleter acted lawfully. If the content of the leaflet relates to *any subject other* than the parking rights of the disabled or if it has not been approved by the Council, the leafleter has violated the ordinance. Like the ordinance in *Mosley,* the regulation's operative distinction between lawful and unlawful is the message in the leaflet. The ordinance, therefore, restricts speech based on its content and is presumptively subject to strict scrutiny.

■ In fact, the ordinance is not only content-based, but also viewpoint-based. A viewpoint-based regulation goes beyond

mere content-based discrimination and regulates speech based upon agreement or disagreement with the particular position the speaker wishes to express. *Madison Joint Sch. Dist. v. Wis. Employment Relations Comm'n.,* 429 U.S. 167, 176, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976). The ordinance in the present case is viewpoint-based because even regarding the subject of the parking rights of the disabled, only leaflets containing a message approved by the Council on Physical Disabilities are permitted. An individual wishing to place leaflets on vehicles expressing a viewpoint on the parking rights of the disabled contrary to that of the Council is prohibited from doing so. *See R.A.V.,* 505 U.S. at 391–92, 112 S.Ct. 2538.

### 3. City's Arguments Against Strict Scrutiny

Notwithstanding that the ordinance is both content and viewpoint-based, the City makes a number of arguments as to why it should nevertheless not be subjected to strict scrutiny. First, the City suggests that a more relaxed level of scrutiny is appropriate because the exception to the ordinance's prohibition on leafleting serves the socially beneficial purpose of protecting the parking rights of disabled drivers. However, under the First Amendment a content-based regulation is no less suspect because the intent of the governmental body enacting it was benign. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (city's "mens rea" or lack of discriminatory animus toward a particular viewpoint irrelevant); *Turner Broadcasting,* 512 U.S. at 677–78, 114 S.Ct. 2445 (O'Connor, J., concurring) ("benign motivation … is not enough to avoid the need for strict scrutiny of content-based justifications;"); *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue,* 460 U.S. 575, 592, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) ("[w]e have long recognized that even regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment.").

Secondly, the City argues that the ordinance should not be subjected to strict scrutiny because its predominant concern is not with the content of the leaflets but with such matters as reducing litter and protecting private property. This argument is somewhat analogous to the "secondary effects" rationale that has been used to uphold regulation of adult entertainment. However, outside the adult entertainment context neither the Supreme Court nor the Seventh Circuit has found that a secondary-effects justification warrants applying lesser scrutiny to a facially content-based regulation. *Schultz,* 228 F.3d at 845. Further, the rationale underlying the secondary effects cases is not present here. The rationale for relaxed scrutiny in such cases is that a content-based distinction is warranted because sexually explicit material is the source of social problems that the government wishes to address. Here, the speech proscribed by the ordinance is not alleged to be the source of any social problems, and, in fact, includes speech of the highest value.

Third, the City argues that the ordinance should be analyzed as if it were content-neutral, because the leaflets it authorizes are like parking tickets, which presumably are not speech within the First Amendment because they are issued by government. *See Bd. of Regents v. Southworth,* 529 U.S. 217, 235, 120 S.Ct. 1346, 146 L.Ed.2d 193 (2000). However, the authorized leaflets constitute speech under the First Amendment because their purpose is to communicate information, and they are neither issued nor disseminated by the government. Thus the ordinance's authorization of them must be

considered in determining whether the ordinance is content-based.

Finally, the City argues that because the ordinance regulates placing literature on vehicles parked on public streets forum analysis should apply. According to the City, the relevant forum is not the street but the vehicle, which is a non-public forum where strict scrutiny does not apply. However, this argument fails because, assuming that forum analysis applies, the relevant forum cannot be the vehicle on which a pamphlet is placed. In order to be a forum of any kind, property must be public. A vehicle is private property, and thus is neither a public nor a non-public forum. The only public property implicated by the ordinance is the streets on which vehicles are found, and, under forum analysis, streets and sidewalks are the "archetype of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (citing *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988)). By history, tradition and government fiat, streets and sidewalks are open and used for expressive activity. *Perry Educ. Ass'n*, 460 U.S. at 45, 103 S.Ct. 948.

For purposes of determining the appropriate level of scrutiny, I need not determine whether or not to apply forum analysis because in either case the result is the same. If the ordinance is treated as restricting leafleting on private property, strict scrutiny applies because the ordinance is content-based. If the ordinance is treated as restricting leafleting on public property, the property in question is a traditional public forum, and the appropriate standard of review of content-based legislation is also strict scrutiny.

For the foregoing reasons, the City ordinance is subject to strict scrutiny.

## B. Application of Strict Scrutiny

 Under strict scrutiny, laws regulating the content of speech will be upheld only when they are justified by compelling governmental interests and employ the least restrictive means to effectuate those interests. *Sable Communications*, 492 U.S. at 126, 109 S.Ct. 2829. Regarding this standard the Supreme Court observed that:

> As a matter of constitutional tradition in the absence of evidence to the contrary, we presume that governmental regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it. The interest in encouraging freedom of expression in a democratic society outweighs any theoretical but unproven benefit of censorship.

*Reno v. American Civil Liberties Union*, 521 U.S. 844, 885, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).[4]

Thus, it is extremely difficult for a governmental body to meet the compelling interest standard. The Supreme Court has said that if the compelling interest test means what it says, "many laws will not meet the test." *Employment Div. v. Smith*, 494 U.S. 872, 888, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). "Requiring a State to demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest

**4.** In his concurring opinion in *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 124–25, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (Kennedy, J., concurring), Justice Kennedy expressed the view that the strict scrutiny standard found its way into First Amendment jurisprudence accidentally, and that the standard should never have been applied to laws regulating speech based on content. In his view, a content-based regulation of protected speech is unconstitutional and cannot be justified by any state interest. *Id.*

is the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). A compelling interest is a "paramount [interest,] . . . [an] interest of the highest order." *Swanner v. Anchorage Equal Rights Comm'n*, 513 U.S. 979, 982, 115 S.Ct. 460, 130 L.Ed.2d 368 (1994) (Thomas, J., dissenting) (internal quotation marks and citation omitted).[5]

 The City argues that the interests served by the ordinance include protecting private property, reducing litter and visual clutter, and improving driver and pedestrian safety. The City, however, does not define visual clutter. Nor does it explain how prohibiting placing leaflets under the windshield wipers of parked cars protects private property or driver or pedestrian safety. Even assuming, however, that these interests are actually served by the ordinance, none of them meets the "compelling" standard. Aesthetic interests and traffic safety have been found substantial, *see, e.g., City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805–87, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), but not compelling, *see, e.g., Curry v. Prince George's County*, 33 F.Supp.2d 447, 452 (D.Md.1999) (traffic safety and aesthetic interests not compelling); *Whitton v. City of Gladstone*, 54 F.3d 1400, 1409 (same); *City of Ladue v. Gilleo*, 512 U.S. 43, 54, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (reducing visual clutter not compelling).

Further, even if under some circumstances these interests might be found to be compelling, the City has not shown them to be so here, particularly when balanced against the type of speech at issue. Within "practical boundaries" the Supreme Court has "shown special solicitude" for inexpensive forms of expression which are available to almost everyone. *City Council of Los Angeles*, 466 U.S. at 813 n. 30, 104 S.Ct. 2118. Where important speech interests are involved, governmental interests in preventing litter have not been found to be sufficiently significant to override them. *See, e.g., Schneider v. State of New Jersey*, 308 U.S. 147, 162–63, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (litter insufficient justification for ban on leafleting; "[t]he purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it."); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (preventing fraud and libel insufficient to justify ban on anonymous leafleting); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (privacy, safety and preventing fraud insufficient to justify limiting door-to-door solicitation to organizations that use at least 75% of their receipts for charitable purposes); *Martin*, 319 U.S. at 145–49, 63 S.Ct. 862 (nuisance and potential for fraud insufficient to justify ban on door-to-door canvassing); *City of Watseka v. Ill. Public Action Council*, 796 F.2d 1547 (7th Cir.1986) (privacy and potential for fraud insufficient to justify regulation on hours for door-to-door solicitation).

For the foregoing reasons, the City fails to demonstrate that the ordinance is justified by compelling governmental interests. Thus, the ordinance does not overcome the presumption of unconstitutionality that accompanies the strict scrutiny standard and

---

**5.** A rare case in which the Supreme Court found a compelling interest is *Burson v. Freeman*, 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992), where, in the context of a public forum, the Court upheld a prohibition on political campaigning within 100 feet of a polling place and found that the government had a compelling interest in preventing voter intimidation and election fraud.

is unconstitutional under the First Amendment.

Under the strict scrutiny test the government is also required to choose the least restrictive means to further its articulated interest. *Sable Communications*, 492 U.S. at 126, 109 S.Ct. 2829. Because the City has not demonstrated that the ordinance serves compelling interests, I need not address this prong of strict scrutiny review. It appears, however, unlikely that the City has chosen the least speech restrictive means of furthering the aesthetic interests that it asserts are furthered by the ordinance. For example, the City could address the problem of litter without implicating free speech rights by enacting an ordinance targeting litterers rather than prohibiting leafleting. *See, e.g., Jews for Jesus v. Mass. Bay Transp. Auth.*, 984 F.2d 1319, 1324 (1st Cir.1993).

In connection with the means chosen by the City to serve its asserted interests I note, although I need not decide, that even if the ordinance were content-neutral and subject to a less-exacting standard of review, it nevertheless might be unconstitutional. In *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1222 (8th Cir.1998), the Eighth Circuit found that a content-neutral law prohibiting leafleting on vehicles was not narrowly tailored to serve a substantial state interest. Relying on cases striking down prohibitions on handbilling and canvassing, the court recognized the rights of listeners and took "into consideration the opportunity for the would-be recipient to provide effective notice that the communications are not wanted." *Id.* at 1219–20. The court found that the regulation was not narrowly tailored because, instead of permitting automobile owners who were interested in receiving messages from doing so and allowing uninterested owners to place the equivalent of a no-trespassing sign on their dashboards, the ordinance simply prohibited all leafleting. *Id.* It, therefore restricted more speech than was necessary. *Id.* at 1221.

## V. CONCLUSION

For the foregoing reasons, I find that strict scrutiny is the proper standard of review of the City ordinance, and that the ordinance does not survive strict scrutiny and is, therefore, unconstitutional under the Free Speech Clause of the First Amendment.[6]

**THEREFORE, IT IS HEREBY ORDERED** that plaintiff's request for a preliminary injunction against enforcement of the City's ordinance is **GRANTED,** and the City's Motion to Dismiss is **DENIED.**

---

**6.** In her complaint, plaintiff also alleged that the ordinance violated the Equal Protection and Free Exercise Clauses. However, plaintiff did not address these issues in her briefs; thus, I need not either.