**Rosemary DEIDA, Plaintiff,**

**v.**

**CITY OF MILWAUKEE and Scott Mc Callum, Defendants.**

**No. 01–C–0324.**

United States District Court, E.D. Wisconsin.

March 25, 2002.

Mathew D. Staver (Staver), for Plaintiff or Petitioner.

Thomas J. Balistreri (Balistreri), Rudolph M. Konrad (Konrad), for Defendant or Respondent.

*DECISION AND ORDER*

ADELMAN, District Judge.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Rosemary Deida is a devout Christian who from time to time distributes religious literature to the public. She hands leaflets to people she sees on the street and in public buildings, and she sometimes places leaflets under the windshield wipers of parked cars. It is this last activity that led to the dispute in this case.

On December 20, 2000, she received a citation for violating a City of Milwaukee ordinance prohibiting leafleting on cars. Her citation stated that she had violated Milwaukee City Ordinance 101–3 "Adopting State Statute 346.94(4)" and was subject to a forfeiture of $158.00, which she paid. (R. 1 Ex. A.) Then she commenced the present action challenging, under the First Amendment, Wis. Stat. § 346.94(4) and the City ordinance adopting it and naming as defendants, Governor Scott McCallum and the City of Milwaukee. Plaintiff has since sought to amend her complaint to add other state officials as defendants. (I will refer to the Governor and the other state officials that plaintiff proposes to add as the "State Defendants.")

In order to understand the issue presently before me, it is necessary to briefly discuss the relationship between Wis. Stat. § 346.94(4) and the City ordinance adopting it, Milwaukee, Wis., Traffic Code § 101–3(1). Section 346.94(4) is a traffic law; and in Wisconsin, the state and local municipalities have a particular relationship with regard to traffic laws. In order to make traffic laws uniform, the state has enacted a comprehensive scheme of traffic regulations and "preempted the field." *City of Janesville v. Walker,* 50 Wis.2d 35,

36, 183 N.W.2d 158 (1971). Thus, a municipality cannot pass a traffic law unless it is "expressly authorized by" and "strictly conform[s]" to state law. *Town of East Troy v. A-1 Serv. Co.*, 196 Wis.2d 120, 130, 537 N.W.2d 126 (Ct.App.1995) (citing Wis. Stat. §§ 349.01, 349.06). A local ordinance "need not be a carbon copy of the state statute," but it cannot impose a higher penalty or prohibit more conduct than the state statute. *Walker*, 50 Wis.2d at 39, 183 N.W.2d 158. State law provides that a municipality will be deemed to have "strictly conform[ed]" if it incorporates the state laws by reference. Wis. Stat. § 349.06(2). Milwaukee, like many municipalities in Wisconsin, has taken this route and adopted the state's entire scheme of traffic regulation wholesale. Thus, the ordinance under which plaintiff was cited merely states: "The city of Milwaukee adopts ch. 346, Wis. Stats., 1969, and all subsequent amendments thereto defining and describing regulations with respect to vehicles and traffic for which the penalty is forfeiture only, including penalties to be imposed." Milwaukee, Wis., Traffic Code § 101-3(1). Under the Wisconsin system, state officials are authorized to enforce the state law, and local governments typically enforce their own identically-worded ordinances.

In the present case, although plaintiff raises the same First Amendment claim against the state law and the City ordinance, the responses of the State Defendants and the City to the lawsuit have diverged. The State chose not to defend the law's constitutionality, but rather argued that all state officials were immune from suit under the Eleventh Amendment. This position left the City to defend the merits of the law on its own.

On December 10, 2001, I rejected the City's arguments and found that plaintiff had a reasonable likelihood of showing that the ordinance was facially unconstitutional under the First Amendment because it restricted speech based on content and viewpoint and failed to satisfy strict scrutiny. *Deida v. City of Milwaukee*, 176 F.Supp.2d 859 (E.D.Wis.2001). I therefore preliminarily enjoined the City from enforcing the law. *Id.* Since then, the City has advised that it no longer wished to contest plaintiff's suit, and that it consented to the entry of a permanent injunction. Therefore, on March 18, 2002, I permanently enjoined the City from enforcing its ordinance. (R. 65.)

The only remaining issues are those concerning the State Defendants. Plaintiff has moved to add as defendants Wisconsin Attorney General James E. Doyle, Milwaukee County District Attorney E. Michael McCann, and Superintendent of the Wisconsin State Patrol Douglas L. Van Buren. The State Defendants have moved to dismiss plaintiff's claim against the Governor on the grounds that he is immune from suit under the Eleventh Amendment, and that there is no justiciable case or controversy under Article III. They also oppose the plaintiff's motions to add these other state officials as defendants on the ground that they would be similarly immune, and that the amendment would, therefore, be futile.

## II. STANDARD FOR MOTION TO DISMISS

█ The State Defendants argue that I should dismiss plaintiff's original complaint for lack of subject matter jurisdiction and that I would have to dismiss her amended complaints for the same reason. A motion to amend should be denied if the proposed amended complaint could not survive a motion to dismiss. *See Duda v. Bd. of Educ. of Franklin Park Public Sch. Dist. No. 84*, 133 F.3d 1054, 1056-57, 1057 n. 4 (7th Cir.1998). Therefore, consideration of the motion to dismiss and the motions to

amend requires analysis of the same issues and application of the same standard; and I will address the motions together.

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), I accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Am. Fed'n of Gov't Employees, Local 2119 v. Cohen,* 171 F.3d 460, 465 (7th Cir.1999). I "presume[ ] that general factual allegations [in the complaint] embrace those specific facts necessary to support the claim," and I grant the motion only if relief would be impossible under any consistent set of facts. *Id.* (citations omitted).

I am not limited to reviewing only the pleadings. *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,* 149 F.3d 679, 685 (7th Cir.1998). When a defendant proffers evidence "that calls the court's jurisdiction into doubt[,] ... [t]he presumption of correctness that [I] accord to a complaint's allegations falls away." *Id.* At that point, the plaintiff must come forward with competent proof to support the allegations in its complaint. *Id.*

## III. DISCUSSION

### A. Justiciable Case or Controversy under Article III

"Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *Tobin for Governor v. Ill. State Bd. of Elections,* 268 F.3d 517, 527 (7th Cir.2001) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). To show an actual case or controversy, plaintiff must show both that she has standing to assert her particular claims and that it is an appropriate time for judicial intervention. *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). The State Defendants challenge both aspects of justiciability; they argue that plaintiff does not have standing and that her claim is not ripe for review.

To have standing to raise a claim, a plaintiff must allege that she has suffered (1) an "actual or imminent ... invasion of a legally protected interest" (2) caused by the defendant that (3) "a favorable decision is likely to redress." *Tobin for Governor,* 268 F.3d at 527 (citations omitted). The related doctrine of ripeness requires the court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Commodity Trend Serv.,* 149 F.3d at 687 n. 3 (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The plaintiff bears the burden of proving these elements and "must support each element in the same way as any other matter on which the plaintiff bears the burden of proof at that particular stage of the litigation." *Alliant Energy Corp. v. Bie,* 277 F.3d 916, 919 (7th Cir.2002). Thus, at the pleading stage, general factual allegations usually suffice *Id.*

In a facial pre-enforcement challenge to a statute based on the First Amendment, the standing and ripeness requirements are more relaxed than in other contexts. *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 634 (7th Cir.1990) (" 'breathing room' ... attaches to standing doctrine in the First Amendment context"); *Pittman v. Cole,* 267 F.3d 1269, 1283 (11th Cir.2001) ("injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where First Amendment rights are involved"); *Ruocchio v. United Transp. Union,* 181 F.3d 376, 385 (3d Cir.1999) ("[C]ourts have been expansive in their view of standing to bring legal action in situations in which free speech rights are

implicated."); *ACLU v. Johnson*, 194 F.3d 1149, 1154–55 (10th Cir.1999) ("[R]ipeness requirements ... are somewhat more relaxed when First Amendment values are implicated"). The relaxed rules of justiciability are "justified by the overriding importance of maintaining a free and open market for the interchange of ideas," *Young v. Am. Mini Theatres*, 427 U.S. 50, 60, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), and by the far-reaching effects of a penal statute, the mere of existence of which can chill speech and thereby injure potential speakers and listeners, *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Sequoia Books*, 901 F.2d at 634.

### 1. The *Babbitt* Test: Injury in Fact and Ripeness

#### a. Applicable Law

When a plaintiff raises a First Amendment pre-enforcement challenge to a penal law, courts apply the test outlined in *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), to determine both whether the plaintiff has alleged an injury in fact for standing and whether plaintiff's claims are ripe for review. *Commodity Trend Serv.*, 149 F.3d at 687 (citing *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301). The *Babbitt* test requires a plaintiff to allege (1) an intent "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute," and (2) that by engaging in such conduct, she would face "a credible threat of prosecution." *Id.* Notably, *Babbitt* does not require a plaintiff to expose herself to actual prosecution in order to challenge the statute. *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301; *see also Am. Bookseller's Ass'n*, 484 U.S. at 393, 108 S.Ct. 636; *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Commodity Trend Serv.*, 149 F.3d at 687; *Hays v. City of Urbana, Ill.*, 104 F.3d 102, 103 (7th Cir.1997). Under *Babbitt*, the plaintiff's fear of prosecution and self-censorship constitute the injury for standing purposes. *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301; *see also Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir.1995). A plaintiff who satisfies *Babbitt* also satisfies the ripeness test because a facial challenge "presents only a legal issue—the quintessentially 'fit' issue for present judicial resolution," *Commodity Trend Serv.*, 149 F.3d at 687 n. 3, and the fear of prosecution and self-censorship show that plaintiff would suffer hardship if judicial review were postponed, *Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1141–42 (7th Cir.1994).

The rule that a plaintiff does not have to risk prosecution in order to challenge a penal statute on First Amendment grounds is firmly entrenched in our law. *Steffel*, 415 U.S. at 462, 94 S.Ct. 1209; *Smith*, 23 F.3d at 1141–42. In *Steffel*, the Court explained that to hold otherwise would force a plaintiff to choose between "intentionally flouting state law" and "forgoing what he believes to be constitutionally protected activity." *Steffel*, 415 U.S. at 462, 94 S.Ct. 1209. Courts should not force a plaintiff to violate the law in order to assert her rights; rather, courts should reward fidelity to the law and enable a plaintiff to challenge a law before it is enforced against her. *Id.; see also Mobil Oil Corp. v. Attorney Gen.*, 940 F.2d 73, 75 (4th Cir.1991) ("Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.").

Nonetheless, the mere existence of a statute adverse to plaintiff's interests is

not sufficient to show justiciability, *see Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); rather, the threat of prosecution under the statute must be "credible," not merely "speculative," *Babbitt,* 442 U.S. at 289, 99 S.Ct. 2301; *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Stated another way, the plaintiff's fear of prosecution must be "objectively well-founded," not subjective or baseless. *Wis. Right to Life, Inc. v. Paradise,* 138 F.3d 1183, 1185 (7th Cir.1998). However, case law reveals the "credible threat of prosecution" standard to be a rather forgiving one. Generally, courts should find the threat credible when a plaintiff has a serious intent to engage in the unlawful conduct and "the government fails to indicate affirmatively that it will *not* enforce the statute." *Commodity Trend Serv.,* 149 F.3d at 687 (citing *Am. Booksellers Ass'n,* 484 U.S. at 393, 108 S.Ct. 636); *see also N.H. Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 15 (1st Cir.1996) ("[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence."); *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1502 (10th Cir.1995) (finding threat of prosecution credible where state had "not affirmatively disavowed any intention of bringing a criminal prosecution").

Disavowal of the statute requires that the state do more than say during the litigation that it might never prosecute plaintiff, *see Babbitt,* 442 U.S. at 302, 99 S.Ct. 2301, or that it does not intend to prosecute plaintiff, *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1192–93 (10th Cir.2000). In order to disavow the statute, the state must instead take some affirmative step against enforcement. *See Wis. Right to Life,* 138 F.3d at 1185. For example, in *Babbitt,* the plaintiff farm workers' union faced a credible threat of prosecution under a statute that criminalized making false statements during consumer publicity campaigns, even though the state had never prosecuted anyone under the statute, never threatened to prosecute plaintiff and said that it might never prosecute anyone in the future. *Babbitt,* 442 U.S. at 301–302, 99 S.Ct. 2301. The Court stated that because there was a reasonable probability that defendants would engage in the proscribed conduct and the state had not disavowed any intention of invoking the provision at some point, the plaintiffs were "not without some reasons in fearing prosecution for violation of the ban." *Id.* at 302, 95 S.Ct. 2336. Similarly, in *Citizens for Responsible Government,* 236 F.3d at 1192–93, the court found that the plaintiff faced a credible threat of prosecution even though the state had insisted throughout the litigation it would not prosecute groups like plaintiff. The court held that the state's assertions during the litigation were not binding on future administrations and were "insufficient to overcome the [present] chilling effect of the state's plain language," which proscribed plaintiff's conduct. *Id.* However, in *Wisconsin Right to Life,* the plaintiff political action organization faced no credible threat of prosecution, even though it was violating the law's express requirements, because the state body that enforced the law had promulgated a rule stating that it would not enforce the law against groups like plaintiff and had consistently for twenty-five years followed an Attorney General Opinion recommending against enforcement. *Wis. Right to Life,* 138 F.3d at 1185.

The State Defendants argue that plaintiff cannot establish a case or controversy until the defendants actually threaten to enforce the law against her. However, whether a defendant has directly threatened enforcement and whether a plaintiff faces a credible threat of prosecution are different questions. *Babbitt* instructs that

courts look at the latter. And courts have often found a credible threat of prosecution against a plaintiff who wishes to engage in constitutionally-protected conduct even though the state never directly threatened to enforce the law against the plaintiff or against anyone. *See, e.g., N.Y. State Club Ass'n v. City of New York,* 487 U.S. 1, 8–10, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); *Am. Booksellers Ass'n,* 108 S.Ct. at 643; *Epperson v. Arkansas,* 393 U.S. 97, 98–102, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Ark. Right to Life State Political Action Comm. v. Butler,* 146 F.3d 558, 560 (8th Cir.1998); *N.H. Right to Life,* 99 F.3d at 12–17; *Bland v. Fessler,* 88 F.3d 729, 736–37 (9th Cir.1996); *Compassion in Dying v. Washington,* 79 F.3d 790, 795–96 (9th Cir.1996), *rev'd on other grounds,* 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *New Mexicans for Bill Richardson,* 64 F.3d at 1499–1504; *Sherman v. Cmty. Consol. School Dist. 21,* 980 F.2d 437, 441 (7th Cir.1992); *Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030, 1033, 1034 n. 6 (11th Cir.1992); *Kucharek v. Hanaway,* 902 F.2d 513, 516 (7th Cir. 1990); *c.f. Schmidling v. City of Chi.,* 1 F.3d 494, 499–500 (7th Cir.1993) (finding no credible threat where city had not threatened enforcement because plaintiff's conduct was not constitutionally-protected, but distinguishing case from those where conduct is constitutionally-protected and no actual threat is required). Courts have even found a credible threat of prosecution where the state indicated that it had no intention of enforcing the law against the plaintiff in the near future. *See, e.g., Chamber of Commerce v. FEC,* 69 F.3d 600, 603–604 (D.C.Cir.1995); *Presbytery of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462–70 (3d Cir.1994); *Mobil Oil Corp.,* 940 F.2d at 76. Thus, I reject the State Defendants' articulation of the standard. With these principles in mind, I apply the *Babbitt* test to the case before me.

**b. Application to Facts**

Plaintiff easily meets the first part of the *Babbitt* test. She alleges that she intends to leaflet cars in Wisconsin and does so at times; but at other times is deterred from doing so out of fear that she will be cited for violating the state statute or a local conforming ordinance. Plaintiff's allegations in her complaint demonstrate the seriousness of her intent. She alleges that, not only does she wish to leaflet in the future, but she has continued to leaflet cars at times in knowing violation of the law and will continue to do so. Thus, she has alleged facts sufficient to show that she fully intends to engage in the conduct at issue.

Her intended conduct, leafleting cars, is "affected with a constitutional interest" because leafleting is a form of speech protected by the First Amendment, *Martin v. City of Struthers,* 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). Indeed, plaintiff's speech addressing religious matters is speech of the highest constitutional order. *See DeBoer v. Vill. of Oak Park,* 267 F.3d 558, 570 (7th Cir.2001) (citing *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 760, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995)).

As for whether the statute proscribes this conduct, the challenged provision states:

> Missiles, circulars or pamphlets. No person shall throw any missile, circular or pamphlet at the occupants of any vehicle or throw or place any missile, circular or pamphlet in or on any vehicle, whether or not the vehicle is occupied. This subsection does not apply to any person who places on a vehicle educational material relating to the parking privileges of physically disabled persons if the person has a good faith belief that the vehicle is violating state or local law on parking for motor vehicles used by

> the physically disabled and the educational material has been approved by the council on physical disabilities as provided under s. 46.29(1)(em).

Wis. Stat. § 346.94(4). Violators are subject to forfeiture of "not less than $20 nor more than $400." Wis. Stat. § 346.95(2). The State Secretary of the Department of Transportation's traffic officers are required to enforce the provision by citing violators and making arrests where appropriate. Wis. Stat. § 110.07(1)(a). In addition, all "municipal judges, judges, district attorneys and law enforcement officers" must "assist in enforcing" the provision. Wis. Stat. § 110.07(1)(b).

Plaintiff alleges that she intends to "place ... pamphlet[s] in or on ... vehicle[s]" on public streets in the State of Wisconsin, conduct that the state statute prohibits, penalizes and requires state officials to prosecute. Her religious pamphlets clearly do not fall within the statute's one exception for disabled driver parking literature. Therefore, her conduct is "proscribed by statute," *Babbitt,* 442 U.S. at 298, 99 S.Ct. 2301. Indeed, plaintiff has already been cited once for violating the City of Milwaukee ordinance that adopts the state statute verbatim.

Thus, I reach the remaining question in the *Babbitt* inquiry—whether plaintiff faces a credible threat of prosecution. As stated above, I assume that the threat of prosecution is credible unless the State Defendants demonstrate that they have affirmatively disavowed the statute. Counsel for the State Defendants has made certain representations to the court, and I must determine whether they constitute affirmative disavowal.

The State Defendants' "Rebuttal to Second Motion for Leave to File Amended Complaint" includes the following statement:

> The author of this brief was a prosecuting attorney for the City of Milwaukee for two years and for the State of Wisconsin in the Attorney General's Office for over thirty years and until this case he was unaware of the statute or the ordinance and never heard of anyone being prosecuted for violating either. Deputy District Attorney Robert Donohoo of Milwaukee County, also a prosecutor for over thirty years, was similarly unaware of the statute or any prosecution under it. Legal Counsel for the Wisconsin State Patrol was advised that they do not enforce "parking regulations" and have probably never enforced this statute.

(R. 51 at 4 n. 2.) The State Defendants also state that they intend to publish an article in the *"Prosecutor's Newsletter"* which will inform all district attorneys in the state of my prior decision preliminarily enjoining enforcement of the City ordinance. (R. 51 at 4.) They attach a copy of the draft article which states that although Wis. Stat. § 346.94(4) has not yet been found unconstitutional, "[d]istrict attorneys would be well advised ... not to charge defendants with the offense." (R. 51 Ex. A.)

Upon initial review, I determined that these representations, although vague, could, if clarified, shed doubt on the court's subject matter jurisdiction. Therefore, in keeping with Seventh Circuit's requirement that the court inquire further in such an instance, *see Ind. Gas Co. v. Home Ins. Co.,* 141 F.3d 314, 316 (7th Cir.1998); *Prizevoits v. Ind. Bell Telephone Co.,* 76 F.3d 132, 134–35 (7th Cir.1996), I held a status conference on March 15, 2002. During this conference, I specifically asked the State Defendants' counsel whether he could assure plaintiff that his clients would not enforce Wis. Stat. § 346.94(4) against her. In response, the State Defendants' counsel refused to provide such assurance. He stated that he could not say unequivocally that his clients will not enforce Wis.

Stat. § 346.94(4) against plaintiff; he only said that based on his conversations with their representatives, the State Defendants presently had no intention of enforcing it against her. When asked whether he could provide affidavits from the State Defendants themselves saying that they would not enforce the statute, counsel said that the State Defendants' position was that they were immune from suit and thus need not defend in this action at all, even by providing such affidavits.

Plaintiff's counsel responded that these representations did not provide plaintiff with adequate assurance that she would not be cited. The State Defendants' counsel's statement was not unequivocal; he pointedly refused to make an unequivocal statement. And even if he had made such a statement, it would not be binding on the individuals who are empowered to enforce the provision. Moreover, even if the State Defendants do not intend to enforce Wis. Stat. § 346.94(4) against the plaintiff today, nothing prevents them from changing their minds tomorrow. Plaintiff's counsel reported to the court that he was aware of another individual being recently cited elsewhere in Wisconsin. Thus, the State Defendants' counsel's representations do not ameliorate plaintiff's fears of prosecution by the State Defendants or by any other government entity or suggest that her fears are unfounded.

I agree. Given that plaintiff's alleged conduct is clearly proscribed by a penal statute that state law requires the State Defendants to enforce, I must assume that they will enforce it unless they produce evidence showing that they have affirmatively disavowed it. At present, no State Defendant has said explicitly to plaintiff or to this court that it will not enforce Wis. Stat. § 346 .94(4) against her. State Defendants' counsel's equivocal representations based on hearsay do not constitute affirmative disavowal. Counsel's statements are not binding on the State Defendants, who are free to enforce Wis. Stat. § 346.94(4), notwithstanding the representations of their lawyer. As plaintiff's counsel pointed out, even if the State Defendants do not intend to enforce the statute today, nothing prevents them from deciding to enforce it tomorrow.

The newsletter article is similarly insufficient to show affirmative disavowal. It shows that State Defendants' counsel has advised district attorneys against enforcing the law; but the State Defendants' counsel has not instructed them not to enforce it. He has no power to do so. Thus, district attorneys need not take his advice and nothing in the record indicates that they will take it. Moreover, nothing would prevent the Attorney General's Office from publishing a contrary notice at any time.

When asked by the court to clear up the confusion and provide unequivocal evidence that the State Defendants would not enforce Wis. Stat. § 346.94(4), the State Defendants' counsel refused. Thus, the State Defendants, even when given the opportunity, did not affirmatively disavow the statute. To the contrary, the pointed nature of counsel's refusal to offer evidence of disavowal in response to an explicit request by the court indicates that the State Defendants may enforce the provision, and thus gives plaintiff even greater reason to fear prosecution. *See Presbytery of Orthodox Presbyterian Church,* 40 F.3d at 1468 (finding that pointed nature of state's refusal to affirmatively say that it would not prosecute gave plaintiff reason to fear prosecution). From the evidence before me I can only conclude that plaintiff faces a credible threat of prosecution by the State Defendants.

In addition, the State Defendants' representations do nothing to ameliorate plaintiff's fear of prosecution by other munici-

palities in Wisconsin that have adopted the law pursuant to the state's uniform scheme. Plaintiff continues to face a credible threat of prosecution by these entities as well.

My conclusion that plaintiff faces a credible threat of prosecution fits squarely within the relevant case law. In *Wisconsin Right to Life,* the duly promulgated regulation, Attorney General Opinion, and twenty-five-year policy against enforcement found sufficient to defeat justiciability offered much greater assurance than counsel's equivocal representations in the case before me. The regulation there was binding. The Attorney General Opinion provided legal advice from the state's lead legal official, which the defendant had followed consistently for twenty-five years. Here, no State Defendant has clearly stated that it will not enforce Wis. Stat. § 346.94(4), let alone bound himself not to enforce it. Although an attorney in the Office of the Attorney general has advised one defendant not to enforce the law, the Attorney General himself has not given any such advice; and even if he had, it would be insufficient to show that the other State Defendants had disavowed the statute. *See Am. Booksellers Ass'n,* 484 U.S. at 395, 108 S.Ct. 636 ("[A]s the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative."); *Vt. Right to Life Comm., Inc. v. Sorrell,* 221 F.3d 376, 383–84 (2d Cir.2000). Moreover, the record contains no evidence showing a long-term policy against enforcement or of any policy against enforcement at all. Thus, the factors that led the Seventh Circuit in *Wisconsin Right to Life* to conclude that the plaintiff faced no credible threat of prosecution are absent here.

Rather, this case is like *Citizens for Responsible Government,* where the court found assurances by counsel insufficient to show that plaintiff faced no credible threat of prosecution because the challenged statute clearly proscribed plaintiff's conduct. In the First Amendment context, it is this proscription and the resulting self-censorship that, when the censorship is reasonable, create the injury sufficient for justiciability. *Hoover,* 47 F.3d at 847. Counsel's equivocal, non-binding representations do not show plaintiff's fears to be unreasonable. Thus, plaintiff has alleged sufficient facts to show that she faces a credible threat of prosecution.

The posture of this case also leads me to conclude that plaintiff has met the *Babbitt* test. On a motion to dismiss, I must read plaintiff's complaint liberally and draw all reasonable inferences in her favor. *Am. Fed'n of Gov't Employees, Local 2119,* 171 F.3d at 465. Thus, the precise question before me is not whether in fact plaintiff faces a credible threat of prosecution, but whether she has alleged sufficient facts to be entitled to proceed to the next phase of the litigation and obtain evidence on this issue. *See Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir.1999). Plaintiff has challenged a statute that plainly proscribes her conduct and that state law requires certain officials to enforce, and has alleged that she is censoring herself as a result, an injury that can occur even without the initiation of any prosecution action, *see Am. Bookseller's Ass'n,* 484 U.S. at 393, 108 S.Ct. 636. Counsel's unsupported and vague statements of the State Defendants' intent do not demonstrate that plaintiff could not obtain jurisdiction under any set of facts consistent with her complaint. Rather, plaintiff must first have the opportunity to test the credibility of the evidence that has been submitted. *See Sapperstein,* 188 F.3d at 855 (finding that district court abused discretion in granting motion to dismiss where plaintiff had no opportunity to challenge credibility of defendant's evidence submitted in support of

motion). Therefore, the State Defendants are not entitled to a dismissal of the action on this ground.

In sum, plaintiff's allegations meet the requirements of the *Babbitt* test. She has alleged her firm intention to engage in protected speech that state law proscribes. The State Defendants have refused to say affirmatively that they will not enforce the challenged statute; and their equivocal statements do nothing to ameliorate the risk that other Wisconsin municipalities will prosecute plaintiff for violating the same provision. Thus, plaintiff faces a credible threat of prosecution. It follows that she has alleged sufficient facts to establish an injury in fact and ripeness.

**2. Causation and Redressability**

Plaintiff also must allege facts sufficient to establish the final two constitutional elements of standing—that the defendants caused her injuries and that the relief she seeks will redress them. *Tobin for Governor,* 268 F.3d at 527. In order to meet these elements, the named defendants must have the power under state law to enforce the statute against her. *Compare Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911), *and Okpalobi v. Foster,* 244 F.3d 405, 426 (5th Cir. 2001) (en banc), *with Gritts v. Fisher,* 224 U.S. 640, 32 S.Ct. 580, 56 L.Ed. 928 (1912), *and Hearne v. Bd. of Educ.,* 185 F.3d 770, 777 (7th Cir.1999). If the defendants do not have this power, then they are not causing her to fear prosecution or to censor herself, nor would an injunction or declaratory judgment provide her with any relief.

Under state law, state patrol officers are required to enforce Wis. Stat. § 346.94(4) by citing violators and/or making arrests, and district attorneys are required to "assist in enforcing" Wis. Stat. § 346.94(4). Wis. Stat. § 110.01(1)(a)(b). Thus, Milwaukee County District Attorney E. Michael McCann and the Superintendent of the State Patrol Douglas L. Van Buren are empowered to enforce the provision and are the officials who have caused plaintiff to fear prosecution and censor herself. Enjoining these two officials from enforcing the law would enable plaintiff to leaflet cars without fear of prosecution, and thus, would redress her injury. In addition, plaintiff's interest in leafleting is sufficiently adverse to these officials, given their duties to enforce Wis. Stat. § 346.94(4), to satisfy the case of controversy requirement for a declaratory judgment. As a result, plaintiff has alleged facts sufficient to have standing to sue them.[1]

The Attorney General is a different matter. Under Wisconsin law, the "powers of the attorney general are strictly limited." *State v. City of Oak Creek,* 232 Wis.2d 612, 626, 605 N.W.2d 526 (2000) (citing Wis. Const. art. VI, § 3). The state constitution creates the office and says that "[t]he powers [and] duties ... of the ... attorney general shall be prescribed by law." Wis. Const. art VI, § 3. "[B]y law" has been interpreted to mean by statutory law. *City of Oak Creek,* 232 Wis.2d at 626, 605 N.W.2d 526. Thus, in Wisconsin, " 'the attorney general has no common law powers or duties,' " *id.* (quoting *State v. Snyder,* 172 Wis. 415, 417, 179 N.W. 579 (1920)), and no " 'inherent power to initiate and prosecute litigation intended to protect or promote the interests of the

1. I note that the injunction against the City does not make plaintiff's claim against these officers moot. The District Attorney and Superintendent are not parties to the injunction and are empowered to enforce the state statute in areas outside the City of Milwaukee. Moreover, the injunction against the City does not reach the state law. The District Attorney and Superintendent could, therefore, enforce the law notwithstanding the injunction.

state or its citizens.... Therefore, unless the power to bring a specific action is granted by law, the office of the attorney general is powerless to act,'" *id.* at 627, 605 N.W.2d 526 (quoting *In re Estate of Sharp,* 63 Wis.2d 254, 261, 217 N.W.2d 258 (1974)). *See also* Christa Oliver Westerberg, *From Attorney General to Attorney Specific: How State v. City of Oak Creek Limited the Powers of Wisconsin's Chief Legal Officer,* 2001 Wis. L.Rev. 1207, 1207 ("Compared to attorneys general in other states, Wisconsin's Attorney General is a common law weakling. While most states' attorneys general have common law or parens patriae authority to bring lawsuits, Wisconsin's Attorney General must rely largely on statutes for his powers."). These statutory grants of authority do not include bringing actions to enforce the provision challenged here, a task that state law gives to district attorneys, Wis. Stat. § 110.07(1)(b). Thus, because the Attorney General has no power to enforce Wis. Stat. § 346.94(4) against plaintiff, he has not caused her injuries and an injunction or declaratory judgment would not remedy them. Therefore, plaintiff does not have standing to sue him.

As for Governor Scott McCallum, the state constitution charges him with "tak[ing] care that the laws be faithfully executed." Wis. Const. art. V, § 4. The record before me does not indicate what role, if any, the Governor has to play in the enforcement Wis. Stat. § 346.94(4), other than his role as the state's chief executive. This role clearly has a more attenuated connection to the enforcement of Wis. Stat. § 346.94(4) than those of the District Attorney and Superintendent although a closer one than that of the Attorney General. However, for reasons addressed in the following section, the Governor is immune from suit under the Eleventh Amendment, regardless of whether plaintiff has standing to sue him; therefore, I do not decide the standing question.

### B. Eleventh Amendment and Sovereign Immunity

The State Defendants also argue that suit against them is barred by the Eleventh Amendment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite the amendment's language, which would seem to indicate that states are only immune from suits by citizens of other states, the Supreme Court has said that the Eleventh Amendment "evidenc[es] and exemplif[ies]" the broader concept of sovereign immunity, which also immunizes states from suit by their own citizens. *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 268, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (citing *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

The Eleventh Amendment and the doctrine of sovereign immunity exist in some tension with the supremacy of federal law and with the role of the federal courts as the entity charged with vindicating federal rights. In order to alleviate some of this tension, the Supreme Court developed the *Ex Parte Young* doctrine. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 105, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing *Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). *Ex Parte Young* distinguishes a state from its officers, and permits suits against state officials in federal court for violations of federal law for prospective injunctive or declaratory relief for ongoing harms. *Pennhurst,* 465 U.S. at 102, 104 S.Ct. 900 (citing *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. 441).

Since the *Ex Parte Young* decision in 1908, the Court has again and again noted

its significance to the maintenance of the federal system and to ensuring the supremacy of federal law. *See Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) ("[T]he availability of prospective relief of the sort awarded in *Ex Parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law."); *Pennhurst,* 465 U.S. at 105–06, 104 S.Ct. 900 ("[T]he *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States."); *see also* Charles Alan Wright, *Law of Federal Courts* 292 (4th ed. 1983) ("[T]he doctrine of *Ex Parte Young* seems indispensable to the establishment of constitutional government and the rule of law.").[2] Its continuing validity is beyond question. *Coeur d'Alene Tribe,* 521 U.S. at 269, 117 S.Ct. 2028 ("We do not . . . question the continuing validity of the *Ex Parte Young* doctrine.").

In *Ex Parte Young,* the plaintiffs challenged a Minnesota statute that created a commission which fixed the rates that railroad companies could charge to transport goods. *Ex Parte Young,* 209 U.S. at 127, 28 S.Ct. 441. Penalties for violation included fines and possible imprisonment, and the plaintiffs sought to enjoin the Attorney General from enforcing the rule. *Id.* at 127–31, 28 S.Ct. 441. The Minnesota Attorney General argued that the Eleventh Amendment granted him immunity from suit, but the Court granted the injunction, relying on a fictional distinction between a state and its officers. *Id.* at 160, 28 S.Ct. 441. The Court said that a state has no power to enact an unconstitutional statute; therefore, when the state does so, the state confers no power on a state official. *Pennhurst,* 465 U.S. at 102, 104 S.Ct. 900 (citing *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. 441). If the official acts pursuant to the statute, his or her actions are *ultra vires* and cannot be imputed to the state; thus, he or she is no longer shielded by the state's sovereign immunity. *Id.*; *David B. v. McDonald,* 156 F.3d 780, 783 (7th Cir.1998) ("*Young* treats public officials who violate federal law as renegades, acting *ultra vires,* who therefore may be enjoined without enjoining the state itself."). Because the Attorney General could not act as an agent for the state when his actions were unconstitutional, the Court held that he was not immune. *Ex Parte Young,* 209 U.S. at 132, 28 S.Ct. 441.

### 1. "Some Connection" to the Enforcement of the Law

#### a. Applicable Law

Despite the fact that *Ex Parte Young* is "an obvious fiction" designed to circumvent sovereign immunity, *Coeur d'Alene Tribe,* 521 U.S. at 270, 117 S.Ct. 2028, a suit under *Ex Parte Young* must maintain the precepts of the fiction—that relief will stop the state official's future *ultra vires* acts.

2. In *Coeur d'Alene Tribe,* Justice Kennedy stated that the supremacy of federal law is in no way diminished by requiring plaintiffs to bring federal claims against states in state court instead of federal court; however, only Chief Justice Rehnquist joined Justice Kennedy in this section of the lead opinion. *Coeur d'Alene Tribe,* 521 U.S. at 275, 117 S.Ct. 2028. The remaining seven justices expressly rejected this contention. *See id.* at 293, 117 S.Ct. 2028 (O'Connor, J., concurring) (stating that Justice Kennedy goes too far and noting that "[w]e have frequently acknowledged the importance of having federal courts open to enforce federal rights"); *id.* at 313, 117 S.Ct. 2028 (Souter, J., dissenting) (stating that it is "the responsibility of federal courts to vindicate what is supposed to be controlling federal law").

As a result, *Ex Parte Young* only applies if the challenged law is enforceable and if the state official named as a defendant has "some connection" to the law's enforcement. *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. 441. The official's connection to enforcement can "arise[ ] out of the general law," such as "the general duties of the officer to enforce it as a law of the state," or it can be created by the challenged statute itself. *Id.* at 157–58, 28 S.Ct. 441. The source of the connection is not material, but the connection must exist. *Id.*

If the law is unenforceable or if the official has no connection to it, then the official is merely a proxy for the state, a circumstance that *Ex Parte Young* does not permit. *Id.* at 160, 28 S.Ct. 441; *David B.,* 156 F.3d at 783. Thus, in *Sherman,* the court found all state officials immune from a suit challenging a law requiring students to say the pledge of allegiance because no official could enforce the law. *Sherman,* 980 F.2d at 441. It was hortatory and imposed no penalties for violations. *Id.* However, if the challenged law is enforceable by some state official, the "some connection" requirement means that the plaintiff must sue the particular official charged with enforcement. *David B.,* 156 F.3d at 783; *McNeilus Truck & Mfg., Inc. v. Ohio,* 226 F.3d 429, 437 (6th Cir.2000).

To determine whether a state official has "some connection" to the law's enforcement, courts look at the official's duties and powers under state law, *Sherman,* 980 F.2d at 441, an inquiry that may closely overlap with the causation and redressability inquiries for standing. The language of *Ex Parte Young* indicates that if state law gives an official a general duty to enforce the laws, this charge is sufficient to satisfy the "some connection" standard. *See Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. 441 (stating that the official's connection to enforcement can "arise[ ] out of the general law," such as "the general duties of the officer to enforce it as a law of the state"). However, relying on *Sherman,* many district courts in this circuit have stated that a general duty to enforce the laws is insufficient to make an official subject to suit under *Ex Parte Young. Sierakowski v. Ryan,* 1999 WL 286290, at *2 (N.D.Ill. Apr.27, 1999) (attorney general immune because he had no connection to enforcement other than general duty to enforce laws of the state); *Leinberger v. Campion,* No. 93C4764, 1994 WL 374188, at *4–5 (N.D.Ill. July 13, 1994) (same); *Weinstein v. Edgar,* 826 F.Supp. 1165, 1167 (N.D.Ill.1993) (same with regard to governor); *Back v. Carter,* 933 F.Supp. 738, 752 (N.D.Ind.1996) (stating that governor's general duty not enough but not immune because plays additional role in law's enforcement). The Seventh Circuit's exposition of the *Ex Parte Young* issue in *Sherman* was as follows:

> Plaintiffs have not articulated any theory under which *Ex Parte Young* supports a suit against the Attorney General, who has never threatened the Shermans with prosecution and as far as we can tell has no authority to do so. (States' Attorneys, elected in each county, are the public prosecutors in Illinois. Paragraph 27–3 does not prescribe a penalty, so these officials also have nothing to do with the subject.)

*Sherman,* 980 F.2d 437. Because *Sherman* involved a statute that was unenforceable by any state official, regardless of the nature of his or her authority, *Sherman* does not address the application of *Ex Parte Young* to suits challenging enforceable penal laws, such as the one before me. Nonetheless, *Sherman* is susceptible to the broader interpretation given it by courts within this circuit. Other circuit courts have also held that a general duty to enforce the laws is insufficient to strip an official of his or her immunity even if

the challenged law is enforceable. *Long v. Van de Kamp,* 961 F.2d 151, 152 (9th Cir.1992); *Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir.1979). Given that the weight of authority says that a general duty is insufficient, I will concur.[3]

I note that in most cases where the challenged law is enforceable, the "some connection" question will be largely academic. Essentially, plaintiffs wishing to file suit under *Ex Parte Young* must make sure that they name the right defendant, meaning the official that state law empowers to enforce the challenged statute. Thus, in *Sherman,* the court suggested that were the law enforceable, district attorneys would be the appropriate defendants because state law gave them the power to enforce the law. *Sherman,* 980 F.2d at 441; *see also Sierakowski,* 1999 WL 286290, at *2 (finding that Secretary of Department of Public Health was not immune because statute gave him enforcement power); *Lytle v. Griffith,* 240 F.3d 404, 410 (4th Cir.2001) (addressing *Ex Parte Young* question as matter of making sure plaintiff names correct defendant); *id.* at 414–15 (Wilkinson, J., dissenting) (same).

As they argued with regard to Article III, the State Defendants again argue that in order to sue under *Ex Parte Young,* the plaintiff must show more than the state official's ability to enforce the law; the plaintiff must show that the official has threatened to enforce or is enforcing the law against her. Because no state official has threatened plaintiff, it follows, according to the State Defendants, that no state official is subject to suit and, therefore, plaintiff cannot challenge Wis. Stat. § 346.94(4) at all.

However, the State Defendants' argument that they cannot be sued until they threaten plaintiff misunderstands the role that the threat of future enforcement plays in the *Ex Parte Young* analysis. Threat of future enforcement is relevant under *Ex Parte Young* only to the extent it shows that the plaintiff is suing the correct state official and is seeking prospective relief for future harms, as opposed to retroactive relief for past harms, which is unavailable under *Ex Parte Young. Green,* 474 U.S. at 73, 106 S.Ct. 423; *Summit Med. Assocs. v. Pryor,* 180 F.3d 1326, 1338 (11th Cir.1999). If state law clearly empowers the named defendant to enforce the statute and the plaintiff seeks only prospective relief, then whether the defendant has actually threatened the plaintiff with enforcement is irrelevant. *Summit Medical Assocs.,* 180 F.3d at 1338; *see also Hearne,* 185 F.3d at 777. *Ex Parte Young* applies anyway.

*Sherman* is not to the contrary. The court in *Sherman* noted that the Attorney General had never threatened the plaintiffs but also noted that the Attorney General had no power to enforce the law. *Sherman,* 980 F.2d at 441. The absence of the threat was only relevant because it bolstered the court's conclusion that the Attorney General was not an appropriate defendant. *Id.* The court made clear that, were the law enforceable, district attorneys would be appropriate defendants even absent any threat. *Id.*

Moreover, to the extent that a threat of prosecution is relevant to the *Ex Parte Young* analysis, there is no justification for imposing a standard more restrictive of federal jurisdiction than *Babbitt's* "credible threat" standard, which plaintiff has met. As discussed in the previous section, courts have repeatedly held that expansive rules of justiciability apply in cases ad-

3. In the present case, two of the State Defendants are directly empowered to enforce the law; thus, maintaining a defendant who has only a general connection to the law's enforcement serves no useful purpose.

dressing First Amendment rights. *E.g., Sequoia Books,* 901 F.2d at 634. In this context, pre-enforcement challenges are permissible and indeed desirable, *Steffel,* 415 U.S. at 462, 94 S.Ct. 1209; thus, a plaintiff can raise her claim when the threat of prosecution is credible, without waiting until the defendant makes an actual threat, *Babbitt,* 442 U.S. at 298, 99 S.Ct. 2301. The State Defendants' "actual threat" standard would enable sovereign immunity to subvert the established rules of the First Amendment and Article III.

*Ex Parte Young* cannot justify such an outcome. In *Ex Parte Young,* the Court did not seek to limit federal court jurisdiction; it created a judicial fiction to expand federal court jurisdiction and expressly recognized the importance of allowing pre-enforcement challenges to be raised in federal court, *Ex Parte Young,* 209 U.S. at 147, 28 S.Ct. 441. Thus, I find no justification for the State Defendants' articulation of the rule.

In addition, the cases that the State Defendants cite do not support an "actual threat" requirement. They merely illustrate that in order to invoke the *Ex Parte Young* fiction, the law challenged must be enforceable and the plaintiff must sue the official charged with enforcement. The State Defendants point to *1st Westco Corp. v. Sch. Dist.,* 6 F.3d 108, 112 (3d Cir.1993), in which the Third Circuit found the Attorney General and the Secretary of the Department of Education immune from a suit challenging a school construction procurement statute. However, in *1st Westco,* the two named officials had no power to enforce the statute; rather, the statute gave that power to local school districts. *Id.* The plaintiffs had sued the wrong defendants. Thus, *1st Westco* does not show that officials who have the power to enforce a statute are immune unless they threaten prosecution.

The State Defendants also cite to cases from other circuits refusing to apply *Ex Parte Young* in suits challenging statutorily-created private rights of action. *Okpalobi,* 244 F.3d at 416–24; *Children's Healthcare is a Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1416–17 (6th Cir.1996); *see also Summit Med. Assocs.,* 180 F.3d at 1342. Their holdings are unsurprising given that no state officials were charged with enforcing those laws. However, in the case before me, certain state officials are expressly charged with enforcing the law. Indeed, the Eleventh and Sixth Circuits distinguished the cases before them from cases challenging penal laws enforceable by state officials, finding the latter suitable for application of *Ex Parte Young. See Summit Med. Assocs.,* 180 F.3d at 1337–41 (holding that *Ex Parte Young* applied to plaintiffs' claims against the criminal portion of the statute); *Deters,* 92 F.3d at 1416 n. 10 (distinguishing earlier case challenging criminal statute). Other courts have also made this distinction and applied *Ex Parte Young* to challenges to state penal statutes. *See McNeilus Truck Mfg.,* 226 F.3d at 437 (finding attorney general and state commissioner subject to suit to enjoin criminal statute they were charged with enforcing); *Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 211 (6th Cir.1997) (finding state prosecuting attorney subject to suit to challenge criminal statute he was charged with enforcing, and distinguishing *Deters* ); *Shell Oil Co.,* 608 F.2d at 211 (stating that governor and attorney general would be subject to suit challenging state law making certain conduct unlawful).

**b. Application to Facts**

I now proceed to determine whether plaintiff has named defendants who have "some connection" to the enforcement of Wis. Stat. § 346.94(4). I note that this inquiry overlaps with the causation and

redressability analyses in the standing inquiry.

As discussed in the previous section, district attorneys and the state patrol, are expressly empowered to enforce Wis. Stat. § 346.94(4). Wis. Stat. § 110.07(1)(a)-(b). State patrol officers must cite violators and make arrests where appropriate, Wis. Stat. § 110.07(1)(a), and district attorneys must "assist in enforcing" the provision, Wis. Stat. § 110.07(1)(b). Thus, Milwaukee County District Attorney E. Michael McCann and Superintendent of the Wisconsin State Patrol Douglas L. Van Buren are appropriate defendants under *Ex Parte Young.* If Wis. Stat. § 346.94(4) is unconstitutional, then their acts of enforcement are *ultra vires* and unshielded by the state's sovereign immunity. These two officials are analogous to the district attorneys in *Sherman* whom the court suggested would be subject to suit under *Ex Parte Young* were the challenged law enforceable. Thus, plaintiff can proceed against these officials.

The Governor has the responsibility to "take care that the laws be faithfully executed," Wis. Const. art V, § 4, but appears to have no other connection to the enforcement of Wis. Stat. § 346.94(4). Thus, his only connection is a general duty to enforce the laws. Under the circumstances of this case, I find that the Governor is immune from suit and the claims against him will be dismissed.

The attorney general has even less connection to the law's enforcement because he has no general duty to enforce the laws, *City of Oak Creek,* 232 Wis.2d at 626, 605 N.W.2d 526. Thus, the claims against him must also be dismissed.

**2. Appropriate Remedies under *Ex Parte Young***

In addition to being able to sue only certain defendants under *Ex Parte Young,* plaintiffs can only seek certain types of relief. First, *Ex Parte Young* does not apply to suits seeking retroactive relief; it only applies to suits seeking prospective relief because " '[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But ... deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.' " *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quoting *Green,* 474 U.S. at 68, 106 S.Ct. 423). Second, *Ex Parte Young* does not apply to suits seeking damages; it only applies to suits seeking injunctive and declaratory relief. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Court has said that suits for damages are suits against the state even if only the official is named as a defendant, because a damage remedy would require payment out of the state's treasury. *Id.* Third, *Ex Parte Young* does not apply if the relief sought is "fully as intrusive" on a state's sovereignty as a levy on funds in the state treasury. *Coeur d'Alene Tribe,* 521 U.S. at 287, 117 S.Ct. 2028 (holding that plaintiff could not use *Ex Parte Young* to seek title to submerged lands). Fourth, *Ex Parte Young* does not apply to suits seeking relief under a federal statute that "prescribe[s] a detailed remedial scheme for enforcement." *Seminole Tribe v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

Plaintiff's case falls into none of these prohibited categories. Plaintiff seeks only prospective injunctive relief or a declaratory judgment for relief from ongoing harms, which are forms of relief permitted under *Ex Parte Young.* She seeks no remedy that could be considered as "fully as intrusive" as damages, like the title to submerged lands in *Coeur d'Alene Tribe.* Rather, she seeks either to enjoin

the enforcement of a state penal law, as plaintiffs sought in *Ex Parte Young* itself, or to obtain a declaratory judgment, which the Court has said intrudes even less on state sovereignty interests than an injunction, *Steffel,* 415 U.S. at 462–63, 94 S.Ct. 1209. She claims that the state statute violates her constitutional rights, not a federal statutory right; therefore, the exception for detailed federal statutory remedial schemes recognized by *Seminole Tribe* is inapplicable. Thus, plaintiff's requested relief is also consistent with application of *Ex Parte Young.*

## IV. CONCLUSION

In conclusion, plaintiff can proceed against Milwaukee County District Attorney E. Michael McCann and Superintendent of the Wisconsin State Patrol Douglas L. Van Buren. She has standing to sue these officials, her claim is ripe and they are subject to suit under the doctrine of *Ex Parte Young.* Plaintiff cannot proceed against Attorney General James E. Doyle, both because plaintiff has no standing to sue him and because he is immune from suit under the Eleventh Amendment. Plaintiff also cannot proceed against Governor Scott McCallum.

**THEREFORE, IT IS ORDERED THAT** the State Defendants' motion to dismiss is **GRANTED** and plaintiff's claims against Governor Scott McCallum are **DISMISSED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to amend her complaint to add Attorney General James E. Doyle is **DENIED.**

**FINALLY, IT IS ORDERED** that plaintiff's motion to amend her complaint to add Milwaukee County District Attorney E. Michael McCann and Superintendent of the Wisconsin State Patrol Douglas L. Van Buren is **GRANTED.**